McNeil v. Gates et al.

## McNeil v. Gates et al.

### [MAY TERM, 1883.]

1. TRUSTEE: *His dealings with trust property: Proof of fairness.*
   The dealings of a trustee with the trust property are narrowly scrutinized by courts of equity. If impugned, they can not stand, unless: they have been characterised by the utmost good faith and candor, and the burden is upon the trustee to show their entire fairness. It is an inflexible rule that a trustee to sell for others, can not, directly or indirectly, purchase for his own benefit.

2. STATUTE OF FRAUDS: *Parol contract for redemption: Query:*
   Is a parol contract for redemption of lands from a mortgage or execution sale within the statute of frauds?

3. FRAUD: *Repudiating parol agreement.*
   It is a fraud in a purchaser who has obtained property at a price greatly below its value by means of a parol agreement, to keep the property in violation of the agreement.

APPEAL from *Prairie* Circuit Court in Chancery.
Hon. J. N. CYPERT, Circuit Judge.

*J. E. Gatewood* for appellant.

Meyer was both beneficiary and trustee, and the real purchaser of the land at his own sale. "It is a stern rule of equity that a trustee for others is not allowed to purchase either directly or indirectly for his own benefit at the sale. He cannot be both vendor and purchaser." *Imboden vs. Hunter. 23 Ark., 622 ; Lenox v. Notrebe, Hempst, 251 ; 1 Story, Eq., secs. 321-2.*

The complaint was not answered by either Meyer or Holmes, and every material allegation therein against them must be taken as true. *Gantt's Digest, sec. 4569, sub. 2, and 4608; Newman on Pleading, secs. 499, 501.* Nor is the answer of Gates, which purports to be the answer of Meyer also, verified by Meyer; and the complaint as to him stands unanswered. *Gantt's Dig. secs. 4593-4.*

A trustee is never permitted to make a profit to himself in any of the concerns of his trust, (*1 Story Eq., sec. 465*), nor avail himself of his fiduciary character for any object of personal benefit. *Adams Eq., p. 50, 60.*

2. The production of the money is dispensed with if the party is ready and willing to pay the sum and is about to produce it, but is prevented by the creditor declaring that he will not receive it. *2 Greenl. Ev., ¶ 603, p. 652; Brightley's Fed. Dig., p. 829, ¶ 8; 21 Ark. 559.*

3. Proper notice of the time, terms and place of sale were not given. "No title passes unless the essential requisites of the power are complied with." *1 Hill on Mort., p. 142, sec. 20.*

4. Holmes set up no defense as an innocent purchaser. Without answer the defense of innocent purchaser without notice cannot be made available.

*S. P. Hughes*, for appellees.

The alleged agreement of Meyer, that McNill should have twelve months to redeem, etc., was not in writing, and as it was a contract for the sale and conveyance of land after twelve months, was within the statute of frauds. *18 Mass., 261; 26 Mich., 418; Browne on Statute of Frauds, sec. 229.*

The court below found the facts in the case, and its finding will not be disturbed, unless there is a *total want* of evidence to support it. *23 Ark., 61, 208; 36 Ib., 260; 36 Ib. 285.*

McNeil v. Gates et al.

Holmes was an innocent purchaser, and has made valuable improvements upon the land, and McNeil is estopped by his conduct and words.

Meyer was not both trustee and beneficiary, nor vendor and purchaser. He sold as trustee, and the land was purchased by Gates, and he made Gates a deed for it. Even if the agreement to redeem was made, it was after the sale, and was *nudum pactum*.

### STATEMENT.

SMITH, J. McNeil filed his bill against Gates, Max Meyer and Holmes, alleging that in January, 1874, he had borrowed of Gates $200, making his note payable at twelve months for $260, which included one year's interest at thirty per cent. and the note bore the same rate after maturity. That for security he had conveyed to Gates by deed absolute on its face, a quarter section of land, taking Gates' obligation to reconvey upon repayment of the loan. That for Gates' convenience the form of the security was afterwards changed, the plaintiff executing a deed of trust upon the same tract of land to Meyer as trustee, with power to sell for cash after January 10, 1876, if the debt remained unpaid, and with power to Gates to substitute a new trustee in case Meyer should fail or be unable to act.

The bill further stated that, after the expiration of the period of extension, Gates demanded his money and, as his debtor was unable to pay, suggested to McNeil that Meyer, the trustee, would advance the amount of the debt upon the faith of the trust deed ; that McNeil assented to this arrangement and Meyer thereupon paid Gates the principal of said debt and the interest that had accrued to that time, thus becoming the owner of said note and the beneficiary of said trust deed. That Meyer had on the third of March, 1879, pretended to sell the land under the power contained in the deed and had actually conveyed it to Gates, though he was

the real purchaser himself. That the sale was for a grossly inadequate consideration, the land being worth $800 and bringing only $346.70, the amount of the debt. That this was the only bid made; the plaintiff having been lulled into security, and having used no efforts to bring about competition, by Meyer's promise, made at and before the sale, that the plaintiff might redeem at any time within twelve months upon payment of whatever sum the land should bring, with interest at ten per cent. per annum. That Gates had, twenty-seven days after the sale, quitclaimed to Meyer, who, in the autumn of the same year, had sold the land by parol to Holmes for $600, payable one-third in cash, remainder in one and two years; but that Holmes had bought with full notice of the plaintiff's rights and equities. That on the twentieth of January, 1880, the plaintiff had tendered to Meyer $346.70 with ten per cent. interest from the day of sale and had offered to redeem, but the money had been refused.

This bill was filed February 10th, 1880, and, with it, the redemption money was again tendered. It was insisted particularly that Meyer, being a trustee, was disabled to purchase at his own sale, and that if he was permitted to violate his promise to allow redemption, the plaintiff had been duped and over-reached by his cunning and artifice. The prayer was that the trustee's sale and conveyance might be set aside, the plaintiff allowed to redeem, Gates being required to re-convey and for general relief.

Holmes did not answer the bill. Gates and Meyer filed a joint answer admitting most of the material allegations of the bill, but claiming that the money used in paying off Gates belonged to Meyer's mother who lived in the State of Indiana, and that Gates still continued to be the owner of the note, the money having been advanced as a loan to Gates to be repaid when the note was collected of McNeil, with the deed of trust as collateral security, and with the under-

standing that Meyer was to get the interest subsequently accruing. They denied that Meyer had given McNeil the privilege of redeeming within twelve months, but admitted that McNeil was to have two months for that purpose if he would pay ten per cent. interest per annum ; adding that this was a mere verbal agreement, unsupported by any consideration. They alleged that the land had brought a fair price and that Holmes had made considerable improvements after an assurance from the plaintiff that he would not contend for the land.

Testimony was taken on both sides, which tended in the main to establish the case made by the plaintiff. But at. the hearing his bill was dismissed.

## OPINION.

The theory of the defendants that Gates continued to be the creditor of McNeil, after receiving from Meyer the amount of his debt, is not readily comprehended and is besides totally irreconcilable with the facts proved. If it was true, then it would seem to follow that Meyer has been lending money to Gates at an usurious rate of interest. For the constitution and laws in force when this transaction was had, unlike those under which Gates and McNeil contracted, avoid all contracts that are tainted by usury,. and the lender can recover neither principal nor interest. But we are satisfied that the transaction between Gates and Meyer is not a loan, but a sale of the debt due by McNeil. The full amount of principal and interest to that date was paid. Gates made no note or other promise in writing to refund. The papers were surrendered to Meyer, and he thenceforward received whatever McNeil had to pay, controlled the collection of the debt and conducted all negotiations relating thereto.

On another point also the testimony is very persuasive.

Meyer and not Gates bought the land at the trustee's sale. It was Meyer who managed the whole affair, and employed counsel to conduct the sale. No moneys passed, and Gates very soon afterward quit-claimed to Meyer. And it was Meyer who made the agreement with McNeil for redemption.

Now, the dealings of a trustee with the trust property are narrowly scrutinized by courts of equity. If impugned, they cannot stand unless characterized by the utmost good faith and candor. And the burden is upon the trustee to show their entire fairness. In particular, it is an inflexible rule in these courts that a trustee to sell for others cannot, either directly or indirectly, purchase for his own benfit. In *Adams' Doctrine of Equity*, *60*, it is said : " The most obvious instance of the abuse of a fiduciary character is where a trustee for sale or purchase attempts to buy from or sell to himself. The permitting of such a transaction to stand, however honest it might be in the particular case, would destroy all security for the conduct of the trustee. " See also *Sto. Eq. Jur.*, *secs. 321–2* ; *Lenox v. Notrebe*, *Hempstead's Rep.*, *151* ; *Brittin v. Hanly*, *20 Ark.*, *381* ; *Imboden v. Hunter. 23 Ark,. 622.*

TRUSTEE: His dealings with trust property. Proof of fairness

In such cases there is a conflict of duty and of interest. As trustee it is his duty to sell for the highest price that can be obtained, while as purchaser his interest is to buy as cheaply as possible.

McNeil may set aside the sale of the trustee to himself, if he has not confirmed it with full knowledge of the facts. But it appears that he did acquiesce in the sale, stipulating only for the privilege of redeeming.

Here again the decided preponderance of the testimony is that Meyer, on the day of sale and before, agreed that McNeil might redeem within twelve months upon payment of a sum of money equal to that for which the land should sell and interest at the rate of 10 per cent. per annum.

STAT-
UTE OF
FRAUDS:
Parol
contract
for re-
demption. But it is objected that a parol agreement of this sort is void by the statute of frauds ; certainly it does not fall within the sixth clause of *sec. 2951 of Gantt's Digest*, because, even if the agreement antedated the sale, it might have been performed within the year. *Brown on Statute of Frauds, sec. 274, et seq.* Nor is it entirely clear that it was such a contract for the sale of lands, or any interest in or concerning them, as is required by the fourth clause to be in writing. In *Griffin v. Coffee, 9 B. Mon., 452*, where land sold under execution was subject to redemption for a limited time, the Court of Appeals of Kentucky decided that the time might be extended by parol contract without interfering with the statute.

Waiving this question, the case falls within the principle of *Trapnall v. Brown, 19 Ark., 39*, that it would be a fraud in a purchaser, who has obtained property at a price greatly below its value by means of a verbal agreement, to keep the property in violation of the agreement.

Reversed, and remanded with directions to the court below to enter up a decree that upon the payment into court of $346.70, with interest at 10 per cent. per annum from the third day of March, 1879, to the twentieth day of January, 1880, the plaintiff be permitted to redeem, and if the money is not paid in, to set aside the trustee's sale and order a resale, the property to be set up at Meyer's bid. The court will make the necessary orders for setting aside deeds, reconveyance or divesting title out of the defendants, and the appellees are to pay all costs of both courts.