### FERGUSON *v.* CRAWFORD.

### Opinion delivered January 30, 1922.

1. ASSOCIATIONS—LIABILITY OF OFFICERS.—The officers of a voluntary unincorporated association are bound to act for the common interest of the members and are individually liable for a breach of trust in the conduct of its affairs, and, where an association selected members as trustees to sell an oil lease, such trustees could not reap a profit for themselves, but will be compelled to account therefor at the suit of the other members,

2. ASSOCIATIONS—LIABILITY OF OFFICERS.—Members of an unincorporated association owning an oil lease, being elected trustees for the purpose of selling the lease, could not, while acting as trustees, sell their interest merely in the lease when they could, with the consent of the other members, have sold the entire lease for a proportionately larger price, and must account to the other members for the profits which they would have made if they had sold the entire lease.

3. ASSOCIATIONS—LIABILITY OF OFFICERS—EVIDENCE.—In an action by members of a voluntary association against other members sued as trustees for breach of trust, evidence *held* to justify a finding of the chancellor that defendants were trustees as alleged.

4. ASSOCIATIONS—RIGHT OF MEMBER TO SELL INTEREST.—A member of a voluntary association not an officer or trustee thereof, had a right to sell his own interest in the property as he saw fit, without accounting to other members.

Appeal from Washington Chancery Court; *Ben F. McMahan*, Chancellor; reversed in part.

### STATEMENT OF FACTS.

This was a bill in chancery brought by appellees against appellants to compel them to account as trustees for certain profits made by them in selling an oil lease belonging to all the parties jointly.

Appellants defended on the ground that they were not trustees at the time they sold the oil lease, and that they only sold their own interest in the property.

All the parties to this suit were members of an unincorporated voluntary association formed in the early part of the year 1914, for the purpose of drilling for and producing oil and gas for profit. The association purchased and owned an oil and gas lease of 80 acres in the State of Oklahoma, known as the Josephine Hill lease. It also bought and owned a string, or set of oil well drilling tools. The capital of the association was divided into sixty-four parts, and the shares or holdings of the individual members ranged from one sixty-fourth to one-sixteenth each. The capital with which the association operated was obtained by selling shares to the members at a stipulated price for cash and by levying assessments against their shares pro rata to meet subsequent expenses.

On the second day of July, 1915, the members of the association held a meeting which was participated in by a majority of the members, and J. A. Ferguson, George H. Pettigrew, and T. L. Hart, members of the association, were elected trustees with full power to take charge of and dispose of the property of the association. The record of the meeting shows the following:

"On motion of George H. Pettigrew, Dr. W. T. Gabbert was nominated for chairman, seconded by C. D. Crawford, upon vote, Dr. W. T. Gabbert was elected chairman of the meeting unanimously. On motion of C. E. Crawford, seconded by J. A. Fallin, George H. Pettigrew was elected secretary. On motion of C. E. Crawford, seconded by C. T. Harding, J. A. Ferguson, George

H. Pettigrew and T. L. Hart were elected trustees of the Caudle-English company, with full power and authority to take charge of the property of said company, consisting of an oil and gas lease covering the N½ of the SE¼ of section 6 in township 12 N., range 14 E., McIntosh County, State of Oklahoma, and the gas well and equipment on said lease. Also a string of drilling tools, engine and boiler, and to sell and dispose of same for a price or sum in their judgment most advantageous to the shareholders in said company. On motion, duly seconded, said trustees were authorized to accept the proposition of John Neeley, i. e., ⅛ interest in a certain 80-acre oil and gas lease known as the Neeley-Ferguson lease, for the use of a string of tools in drilling two wells, and to ascertain the amount and definitely fix same, the Caudle-English Company is to pay the said John Neeley for use of manila cable and belt in drilling said two wells. There being no further business before the meeting, same was on motion adjourned. W. T. Gabbert, chairman, George H. Pettigrew, secretary."

Ferguson, Hart and Pettigrew were present at the meeting, and accepted their appointment as trustees. They took charge of and assumed the control and management of the property of the association. T. L. Hart in a short time sold his interest to J. A. Ferguson, and thereafter ceased to act as trustee. J. A. Ferguson and George H. Pettigrew continued to act as trustees in the management and control and disposition of the property of the association. They levied and collected assessments from the members to pay the debts which had been incurred.

In 1916 the trustees received an offer of $6,000 for the oil lease of the association and reported the offer to the members of the association and advised its acceptance. According to the testimony of the trustees, they regarded this as an advantageous offer and told the members of the association, upon their refusal to accept the offer, that they would no longer act as trustees.

Thereafter they did not act as trustees, and Jas. A. Ferguson, A. L. Ferguson, his son, and George H. Pettigrew, who had acquired a ten-sixteenths interest in the oil lease, endeavored to sell their individual interests. In the meantime, Jas. A. Ferguson, who was past seventy-eight years of age, became very feeble in body, and his business affairs were attended to principally by his son, A. L. Ferguson, who was also his business partner. On the 19th day of April, 1917, A. L. Ferguson and George H. Pettigrew entered into a written contract with L. S. Skelton whereby they sold and transferred to him an undivided ten-sixteenths interest in the oil and gas lease on the 80 acres above mentioned. Ferguson and Pettigrew were named in the contract as parties of the first part and Skelton as party of the second part. The agreement contained the following:

"In consideration of the foregoing the party of the second part agrees and binds himself to pay to the parties of the first part at the rate of $12,500 for the whole lease, and if the parties of the first part should deliver only a 10/16 interest in said lease, then they shall be entitled to only a 10/16 of the sum of $12,500, and if parties of the first part shall deliver a 15/16 interest in said lease, then they shall be entitled to 15/16 of the sum of $12,500."

"Party of the second part further agrees that at the time of the execution and delivery of the above mentioned assignments to assign, transfer and convey to the parties of the first part an undivided one-third (1/3) interest in the oil rights in said lease, but this shall not be held to include any of the gas or gasoline rights thereon, and said assignment shall provide that the parties of the first part shall pay one-third (1/3) of all expenses incurred in drilling and operating said premises for oil, and said assignment shall contain the usual covenants and provisions in regard to the development of said premises and the payment of expenses incurred."

Prior to this sale the trustees obtained a one-eighth interest in another oil lease of 80 acres in the same locality as the land in the original lease in exchange for the use of the drilling tools of the association.

Before the case was heard in the chancery court, J. A. Ferguson died, and A. L. Ferguson, as executor of his estate, was substituted for him. During the progress of the suit, E. Z. Davies of the firm of E. Z. Davies & Son, plaintiffs, died and Elza Davies, the surviving partner, was substituted as plaintiff instead.

The evidence on the part of the appellees, who were the plaintiffs below, tended to show that J. A. Ferguson and George H. Pettigrew were still trustees at the time of the sale of their interest in the lease to Skelton on the 19th day of April, 1917, and that they would have sold their interest to Skelton at the price named in his contract with Ferguson and Pettigrew. On the other hand, the evidence for appellants, who were the defendants below, tended to show that they had ceased to act as trustees after the members of the association had refused to make the sale advised by them during the first part of the year 1916. The evidence on this branch of the case will be more particularly stated in the opinion.

The chancellor found the issues in favor of appellees and entered a decree in their favor against A. L. Ferguson, as executor of the estate of J. A. Ferguson, deceased, A. L. Ferguson and George H. Pettigrew in the sum of $2,238.72. From that decree the appellants have duly prosecuted an appeal, and appellees have taken a cross-appeal.

*J. Wythe Walker,* for appellants.

J. A. Ferguson, Pettigrew and Hart were gratuitous, not salaried, trustees, and as such were liable only for gross negligence or carelessness. As to the essential elements in the creation of an express trust and the duration thereof, see 26 R. C. L. p. 1179, § 17.

Where the bailment is beneficial to both parties, the bailee is answerable only for want of ordinary care, or for ordinary neglect. 67 Ark. 284; 61 *Id.* 203.

A gratuitous bailee is responsible for loss of property entrusted to his care only in case of gross negligence. 103 Ark. 12; 101 *Id.* 75.

Appellees reserved to themselves the right to reject the offers of purchase made to J. A. Ferguson and Pettigrew, and did reject the offer, thereby renouncing the trust and terminating it. 26 Ark. R. C. L. 1211, § 53; *Id.* 1713, § 56; 8 Leigh (Va.) 271; 31 Am. Dec. 642; 16 Ala. 414; 50 Am. Dec. 183; 26 R. C. L. 1771, § 121.

A. L. Ferguson was never a trustee. The fact that he was financially interested with his father, and that he is executor of his father's will, does not make of him a trustee. 26 R. C. L. 1278, § 128; 71 Ill. 91; 22 Am. Rep. 85. The office of trustee cannot be delegated unless authority to do so is expressly granted in the instrument from which the trustee derives his powers. 90 N. E. 278; 99 Tex. 349; 6 S. W. 181; 5 A. S. R. 59; 19 A. S. R. 290, note.

*J. W. Grabiel*, for appellees.

This court, in the case of *Red Bud Realty Co.* v. *South*, 96 Ark. 281, 299, announced the principles that are applicable here. See also 134 Ark. 231; 2 C. J. § 353; *Id.* § 369; 2 Pomeroy, Eq. Jur., 4th ed., § 963; 20 R. C. L. 878, § 91.

HART, J. (after stating the facts) The undisputed facts are that all the parties to this suit were members of a voluntary unincorporated association known as the Caudle-English Oil Company, which owned an oil lease of 80 acres in the State of Oklahoma and also a set of drilling tools. On the 2nd day of July, 1915, by a written resolution duly spread upon the records of the association, J. A. Ferguson, George H. Pettigrew and T. L. Hart were elected trustees of the association with full power to take charge of and dispose of all the property of the

association. They accepted and at once took charge of the property of the association as trustees. In a short time Hart sold his interest to Ferguson and did not take any further part in the affairs of the association. Ferguson and Pettigrew continued to act as trustees.

This brings us to a consideration of their duties and responsibilities as such trustees to the members of the association. The officers of a voluntary unincorporated association are bound to act for the promotion of the common interest of all the members, and they are individually liable to their associates for a breach of trust in the conduct of the affairs of the society. 5 C. J., 1351, and Wrightington on Unincorporated Associations, § 44. Accordingly the dealings of a trustee with the trust property are narrowly scrutinized by courts of equity, and in particular it is an inflexible rule in equity that a trustee to sell for others cannot either, directly or indirectly, reap a profit for himself, but will be compelled to account therefor at the suit of the other members. *McNeil* v. *Gates,* 41 Ark. 264.

The obligation of good faith on the part of the trustee towards the beneficiary and the rule that he cannot make a secret profit at the expense of his beneficiary is recognized by counsel for appellants, but he contends that it has no application under the facts presented by the record. The contention of counsel for appellants is that the trustees resigned nearly a year before they made the sale of their interest to Dr. Skelton, and for that reason owed no duties whatever to appellees and might act towards them as strangers. Until the relation was terminated by some unequivocal act on their part, the trustees were bound to act for the promotion of the common interest and could not secretly deal with the property of the association for their own benefit. Of course it is equally true that if they had resigned as trustees and had announced that fact to the other members, they would have been at liberty to deal with them as strangers and to have sold their interest without con-

sultation with the other members and without their knowledge. Here is where the record shows a direct and irreconcilable conflict in the testimony.

Jas. A. Ferguson, A. L. Ferguson, and George A. Pettigrew were all witnesses for appellants. According to their testimony, Jas. A. Ferguson was over seventy-eight years of age and became very feeble in body. He worried a good deal over the affairs of the association and desired to sell its property in the early part of 1916. A. L. Ferguson went to Oklahoma with his father to help him sell the property. A company which had a nearby lease agreed to pay them $6,000 for the interest of all the members of the association. They advised the other members to accept the offer. The other members refused to accept the offer, and the trustees thereupon notified them that they would no longer act as trustees for the association and would thereafter deal with their individual shares as they saw fit. The Fergusons and Pettigrew had acquired a ten-sixteenths interest in the property of the association at the time they sold to Skelton on the 19th day of April, 1917. Their letters show and they admit that they tried after the sale to Skelton to purchase the interest of their associates at a less amount than offered by Skelton, but this they claimed they had a right to do because they were no longer acting in the capacity of trustees for the association and had a right to deal with the members as strangers.

On the other hand, appellees, J. L. McConnell, S. W. Caudle and Elza Davies each testified that he had never been asked to sell his interest on a basis of $12,500 for the whole lease, and that he would have done so if he had had such an opportunity. Each testified that he received a letter or other communication from the trustees after the sale by them to Skelton offering him a less amount for his interest; that he did not know, at the time, of the sale to Skelton. Each of them also testified that the trustees had never notified him that they had ceased to act as such.

Dr. W. T. Gabbert, one of the appellees, testified that he was a member of the association, and that he had never had an opportunity to sell his interest in the association after the sale to Skelton, and that he would have sold his interest on a basis of $12,500 for the entire holding. He stated further that he was never informed by either of the Fergusons or George H. Pettigrew that they, or either of them, had ceased to act as trustees.

All the parties to this lawsuit seemed to have been friends as well as business associates in the beginning. There is nothing in the record tending to show that appellants formed the design of defrauding appellees out of their interest in the property of the association, but, by the well-established rule applicable to the duties and liabilities of trustees, all the profits made by them in dealing with the property of the association must inure to the benefit of the members, and the trustees must account therefor. Hence the decision must turn upon the point of whether appellants had ceased to act as trustees when the sale was made. As before stated, there is a direct conflict in the testimony between appellants and appellees as to whether the trustees had ceased to act as such at the time they sold their interest to Dr. Skelton in April, 1917.

The chancellor found in favor of appellees on this point, and there is nothing in the record which would justify us in reversing that finding as being against the weight of the evidence. Under the settled rules of this court, findings of fact made by a chancellor are binding upon us on appeal unless they are against the clear preponderance of the evidence. Ferguson and Pettigrew, according to the findings of the chancellor, continued to be trustees of the association at the time they sold their interest to Skelton. Their contract with Skelton provided for the sale of the entire holding at $12,500. Hence, under the principles of equity above announced, they must account to their associates for the profits they

would have made on this basis. This, together with the sale of the personal property of the association, would have made appellants liable to appellees in the sum found due by the chancellor, and the decree against the trustees should be affirmed.

It does not follow, however, that there should be an affirmance of the decree against A. L. Ferguson. He was never a trustee of the association and never acted as such. He was the business associate of his father, and on account of this and his filial affection, he tried to help his father sell the property of the association in 1916. The members of the association refused the offer which the trustees had received, and this ended the matter, in so far as A. L. Ferguson was concerned. It is true he participated in the sale to Dr. Skelton in April, 1917, but he was not a trustee and had a right to sell his own interest in the property. He had a right to deal with his own interest in the property as he saw fit and cannot be held accountable as trustee because he saw fit to do so.

Upon the cross-appeal of appellees but little need be said. The trustees made a full and fair accounting of their dealings with the personal property of the association, and the finding of the chancellor on the accounting between the trustees and the other members of the association is correct.

As above stated, there was no actual fraud on the part of the trustees. The whole transaction involved in this lawsuit resulted from a misunderstanding as to whether the trustees had ceased to act as such at the time they sold their interest to Dr. Skelton.

We are of the opinion that the finding of the chancellor upon the accounting is correct, and do not deem it necessary to prolong this opinion by setting out and discussing the various items of the account and our reasons for holding the account to be correct. No useful purpose could be served by such a course.

The result of our views is that the decree against A. L. Ferguson must be reversed and the cause of ac-

tion against him will be dismissed. The decree in favor of appellants against A. L. Ferguson, as executor of the estate of J. A. Ferguson, deceased, and George H. Pettigrew will be affirmed. It is so ordered.