UNITED STATES of America, Plaintiff,

v.

Lawrence P. O'SHAUGHNESSY, individually and as beneficiary of the I.A. O'Shaughnessy Trust; et al., First Trust National Association, et al., Defendants.

No. C8–93–2403.

Supreme Court of Minnesota.

June 24, 1994.

Loretta C. Argett, Asst. Atty. Gen., Gary R. Allen, William S. Estabrook, S. Robert Lyons, Attys., Tax Div., Dept. of Justice, Washington, DC, for plaintiff.

**576**

Sue Ann Nelson, Steven G. Mahon, Tracy M. Smith, Doherty, Rumble & Butler, Minneapolis, for defendants.

## OPINION

WAHL, Justice.

The United States District Court, District of Minnesota, certified to this court, pursuant to Minn.Stat. § 480.061 (1992), the following question of state law:

Under Minnesota law, does the beneficiary of a discretionary trust with the provisions described herein have "property" or any "right to property" in nondistributed trust principal or income before the trustees have exercised their discretionary powers of distribution under the trust agreement?

According to the facts set out in the Order, Lawrence P. O'Shaughnessy is a beneficiary of two separate identical trusts established by his grandparents, I.A. O'Shaughnessy and Lillian G. O'Shaughnessy on December 26, 1951 (the 1951 Trusts) for their 16 (later 17) grandchildren. First Trust National Association (First Trust), Lawrence M. O'Shaughnessy, and Donald E. O'Shaughnessy (Co–Trustees) are the current trustees of the 1951 Trusts.

The 1951 Trust Agreements allow the trustees, in their discretion, to distribute the principal and income of the Trusts to the beneficiaries. Article III provides, in part:

The Trustees in their discretion may pay to [Lawrence P. O'Shaughnessy], or for his benefit, all or such part of the principal or the annual net income of the trust estate as they shall see fit during his lifetime.

\* \* \* \* \* \*

Net income not paid out shall be accumulated and at the end of each calendar year added to the principal of the trust estate.

The Trustees in their sole discretion may pay to [Lawrence P. O'Shaughnessy's father], all or any part of the principal and accumulated income of the trust estate at such time or times and in such amounts as

they deem advisable, and if pursuant to this provision all of the principal and accumulated income of the trust are paid over to [Lawrence P. O'Shaughnessy's father], the trust shall thereupon terminate.

Article VIII of the Trust Agreements further provides that:

If at any time or times in the opinion of the Trustees it is advisable to do so, the Trustees may pay to or expend for any beneficiary such sum from the principal of such beneficiary's share of the trust estate as the Trustees in their sole discretion deem wise, and the discretion so given to the Trustees shall be absolute and binding upon all persons in interest.

Although the trustees have the discretion to distribute or withhold trust assets during Lawrence P. O'Shaughnessy's lifetime, the 1951 Trust Agreements give him a limited power of appointment exercisable only by his last will and testament to a certain class of individuals. If Lawrence P. O'Shaughnessy dies without exercising his power of appointment, Article III dictates the distribution of the principal and undistributed income at his death.

In October 1989, a delegate of the Secretary of the Treasury assessed a $412,921.27 federal income tax deficiency against Lawrence P. O'Shaughnessy for the years 1983 through 1986. On August 1, 1990, First Trust was served with a Notice of Levy upon "property or rights to property" belonging to Lawrence P. O'Shaughnessy and held by First Trust to satisfy the deficiency. No distribution of principal or income from the 1951 Trusts was pending when the levy was served.

The government filed suit in federal court on April 26, 1993, seeking judicial enforcement of the levy. First Trust and the Co–Trustees moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) asserting that at the time the levy was served, they did not hold property or rights to property belonging to Lawrence P. O'Shaughnessy. After a hearing, the federal district court determined that the issue raised by the Motion to Dismiss presented a question of state law appropriate for certification to this court.

The United States has a lien for the amount of any tax deficiency, including interest, upon "all property and rights to property, whether real or personal, belonging to [the delinquent taxpayer]." 26 U.S.C. § 6321 (1988). Although the federal courts decide whether a federal tax lien can attach to a particular interest, the threshold question of whether a taxpayer possesses "property" or "rights to property" must be resolved by reference to state law. *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960).

An express trust creates two separate interests in the subject matter of the trust—a legal interest vested in the trustee and an equitable interest vested in the beneficiary. *Farmers State Bank of Fosston v. Sig Ellingson & Co.,* 218 Minn. 411, 16 N.W.2d 319, 322 (1944). Under a discretionary express trust, "a beneficiary is entitled only to so much of the income or principal as the trustee in his uncontrolled discretion shall see fit to [distribute] * * * [the beneficiary] cannot compel the trustee to pay him or to apply for his use any part of the trust property." IIA Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 155 (4th ed. 1987) [hereinafter *Scott on Trusts* ]. Because discretionary trusts give the trustee complete discretion to distribute all, some, or none of the trust assets, the beneficiary has a "mere expectancy" in the nondistributed income and principal until the trustee elects to make a payment. George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 228 (1992). Creditors, who stand in the shoes of the beneficiary, have no remedy against the trustee until the trustee distributes the property. *Id.*

We are unpersuaded by the government's claim that the 1951 Trusts are not discretionary. The Trust Agreements do not direct the trustees to distribute the trust assets to Lawrence P. O'Shaughnessy. Rather, the agreements state that the trustees "*may* pay * * * all or such part of the principal or the annual net income of the trust estate as they shall see fit during his lifetime." (Emphasis added). This use of precatory language reveals the settlors' intent to create a discretionary trust. More-over, even though the trustees do not have express authority to exclude Lawrence P. O'Shaughnessy from receiving any trust income or principal, the "sole discretion" given the trustees is "absolute and binding upon all persons in interest." While the trustees cannot exercise their discretion in a way that defeats the intent of the settlors or the purpose of the 1951 Trusts, this fact does not change the nature of the 1951 Trusts. Even where trustees have absolute, unlimited, or uncontrolled discretion, any attempt to violate the settlor's intent or the trust's purpose is considered an abuse of that discretion. *Restatement (Second) on Trusts* § 187 cmt. j (1959). So long as the trustees act in good faith, from proper motives, and within the bounds of reasonable judgment, the court will not interfere with their decisions. *Scott on Trusts* § 187. Finally, the intent of the settlors is revealed not only by the clear language of the trust documents but also by the provision allowing the trustees to pay out all of the income and principal to Lawrence P. O'Shaughnessy's father, thereby terminating the Trust and excluding Lawrence P. O'Shaughnessy from the trust assets.

The parties agree that Lawrence P. O'Shaughnessy has an equitable interest in the 1951 Trusts that entitles him to bring suit to compel the trustees to perform their duties, to enjoin the trustees from committing a breach of trust, or to remove the trustees altogether. *See Restatement (Second) of Trusts* § 199; *Farmers State Bank,* 16 N.W.2d at 322. It is also undisputed that the 1951 Trusts give Lawrence P. O'Shaughnessy a testamentary power of appointment. The parties disagree, however, as to whether these interests rise to the level of property rights.

Property is broadly defined by the Minnesota Probate Code as "real and personal property or any interest therein * * * [or] anything that may be the subject of ownership." Minn.Stat. § 524.1–201(29) (1992). This definition, however, is little help in discerning the nature of undistributed discretionary trust assets. More on point is a recent court of appeals decision addressing the nature of undistributed discretionary trust assets in the context of state-funded

medical assistance. *In re Leona Carlisle Trust Created Under the Trust Agreement Dated February 9, 1985,* 498 N.W.2d 260 (Minn.App.1993). In *In re Leona Carlisle Trust,* the court of appeals held that the assets of a discretionary trust were not available assets for the purpose of determining a person's eligibility for public medical assistance. *Id.* at 266. The court recognized that support trusts, which direct the trustee to distribute trust income or principal as necessary for the support of the beneficiary, usually are considered available assets while discretionary trusts are not. *Id.* at 264. The court explained that this was because beneficiaries of support trusts legally can compel the trustee to distribute trust assets while beneficiaries of discretionary trusts cannot. *Id. See Restatement (Second) of Trusts* § 198 cmt. c.

Cases from other states support the holding in *In re Leona Carlisle Trust. See, e.g., Chenot v. Bordeleau,* 561 A.2d 891 (R.I.1989) (discretionary trust assets not available because trustees have discretion to withhold payments); *First Nat'l Bank of Md. v. Dept. of Health & Mental Hygiene,* 284 Md. 720, 399 A.2d. 891 (1979) (state could not compel trustees of discretionary trust to pay for beneficiary's stay in state hospital); *Town of Randolph v. Roberts,* 346 Mass. 578, 195 N.E.2d 72 (1964) (state welfare agency could not recover from discretionary trust for disability payments). Additionally, some states have enacted statutes that preclude creditors from reaching nondistributed discretionary trust proceeds. *See* Mont.Code Ann. § 72–33–304(1) (1993) (creditor cannot compel trustee to exercise discretion); Nev.Rev.Stat. § 166.110 (1993) (trustee's discretion "shall never be interfered with for any consideration of the needs, station in life or mode of life of the beneficiary, or for uncertainty, or on any pretext whatever"). Even in California, where the legislature gave courts the authority to order trustees to distribute discretionary trust assets to reimburse the state for public assistance payments, Cal.Prob. Code § 15306(a)(2) (West 1991), there is no similar provision for tax obligations.

We reject the government's claim that Lawrence P. O'Shaughnessy's equitable interest in the trust and his power of appointment are both property interests subject to taxation under Minnesota law. The estate tax provisions cited as authority by the government were part of the 1978 code and have since been repealed or amended to exclude the quoted language and the cases the government uses to support this claim discuss the applicability of the inheritance tax to property that passes via the terms of a trust and do not address whether the donee's power of appointment is a taxable property interest. Further, in an analogous case, the United States Supreme Court held that an insured's right to control the disposition of his life insurance policy is not a property right to which a federal tax lien could attach. *United States v. Bess,* 357 U.S. 51, 55–56, 78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1958). Finally, this court's decision in *Janssen v. Janssen,* 331 N.W.2d 752 (Minn.1983), that an interest in a nonvested, unmatured pension is "a property interest," in the context of a divorce proceeding, *id.* at 754, does not dictate the result in a case involving a discretionary trust. Whereas the pension in *Janssen* was certain to mature, the trustees of the 1951 Trusts are not required, in the exercise of their absolute discretion, to distribute any of the trust assets to Lawrence P. O'Shaughnessy.

Under Minnesota law the beneficiary of a discretionary trust with the provisions described in the 1951 Trust Agreements does not have "property" or any "right to property" in nondistributed trust principal or income before the trustees have exercised their discretionary powers of distribution under the trust agreement.

Certified Question answered in the negative.