In re The Matter of the John R.
HORTON Irrevocable Trust
Dated February, 1981.

No. C1–02–2266.

Court of Appeals of Minnesota.

Aug. 26, 2003.

Donald F. Ryan, Crow Wing County Attorney, Candace Prigge, Assistant Coun-

ty Attorney, Brainerd, MN, for appellant Crow Wing County Social Services.

John H. Erickson, Erickson, Pearson & Aanes, Brainerd, MN, for respondent trustee Bernhard Warling.

Considered and decided by WILLIS, Presiding Judge, HUDSON, Judge, and FORSBERG, Judge.*

## OPINION

HUDSON, Judge.

Trust beneficiary John R. Horton is incapacitated and has been civilly committed by Crow Wing County to the Brainerd Regional Treatment Center. Crow Wing County Social Services (CWCSS) seeks review of a district court order concluding that the assets of the John R. Horton Irrevocable Trust were not "available" liquid assets, thus relieving the trustee from any obligation to fund Horton's placement in a less-restrictive, adult-care facility. Because we conclude that the John R. Horton Irrevocable Trust is a discretionary trust and the settlor did not intend for the trust to supplant public assistance, we affirm. Because our review is confined to statements supported by the record, CWCSS's motion to strike statements in respondent's brief as outside the trial record is denied.

## FACTS

In the late 1970s, John R. Horton (Horton) was injured in a boating accident in which he sustained a severe head injury. In a subsequent trial, Horton was awarded damages. *See Horton v. Orbeth, Inc.,* 342 N.W.2d 112 (Minn.1984). In 1981, the John R. Horton Irrevocable Trust (Horton Trust) was created, funded by the lawsuit

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

*Minn. Const. art.* VI, § 10.

damage award; Horton's parents, Edward and Francis Horton, served as the initial trustees of the Horton Trust. Bernhard Warling (respondent) became trustee approximately two years ago. Horton, though unmarried at the time the trust was created, subsequently married and has two children. Horton, his wife Rita Horton, and their two children are the trust beneficiaries. Currently, the trust has approximately $293,000 in assets.

In August 2001, Rita Horton lost her job; subsequently, she and John Horton applied to the Minnesota Department of Human Services for medical assistance but were denied assistance because of excess assets.[1] The Hortons appealed the denial. On December 12, 2001, the Minnesota Department of Human Services affirmed the denial of medical assistance, concluding that the assets in the Horton Trust, which exceeded the $3,000 (or $6,000 for a household) limit for personal assets,[2] were available assets for the purpose of determining medical-assistance eligibility. The Horton children, who have special needs, continue to receive medical assistance.

Horton's medical condition deteriorated, and on February 19, 2002, Horton was civilly committed by petition of Crow Wing County to the Brainerd Regional Treatment Center. In compliance with the Minnesota civil-commitment statute,[3] CWCSS determined that the least-restrictive alternative placement for Horton is an adult foster-care facility in Pequot Lakes, Minnesota. The monthly care cost is approximately $3,500.

CWCSS requested that respondent approve Horton's placement plan and guarantee payment for the monthly cost. Respondent has not agreed to expend funds for Horton's placement in the adult-care facility and believes authorizing such funds would exceed the scope of his authority as trustee. Respondent contends that CWCSS should be responsible for financing Horton's placement if it believes that such placement is in Horton's best interests. Respondent further contends that because the trustee currently owns a home in which Horton could reside, a separate housing expense is unnecessary.

On July 11, 2002, pursuant to Minn.Stat. § 501B.16 (2002), CWCSS petitioned the district court for an order directing respondent to make trust assets available for any placement it deemed medically necessary for Horton. Pursuant to Minn.Stat. § 501B.18 (2002), CWCSS published a copy of the order for hearing in a legal newspaper. CWCSS then mailed a copy of the hearing order to respondent's attorney and to Horton in care of the Brainerd Regional Human Services Center.

In respondent's answer to CWCSS's petition, he argued, among other things, that CWCSS lacked standing to petition the district court for an order; that CWCSS failed to state a claim on which relief could be granted; and that the district court lacked subject-matter jurisdiction and personal jurisdiction over respondent. Pursuant to stipulation, the parties agreed that the only issue the district court was to decide was whether respondent is obligated to expend monies for the care of John

---

1. In Minnesota, "Medicaid" is known as "medical assistance." *In re Carlisle Trust,* 498 N.W.2d 260, 263 n. 1 (Minn.App.1993).

2. *See* Minn.Stat. § 256B.056, subd. 3 (2002). Neither John nor Rita Horton appealed the department's determination that the trust assets were "available" for the purpose of deter-

mining medical-assistance eligibility. That ruling is not being considered in this appeal.

3. *See* Minn.Stat. § 253B.09, subd. 1 (2002) (requiring commitment to the least-restrictive treatment program that can meet the patient's treatment needs).

R. Horton. The district court decided in the negative, concluding that the Horton Trust assets are unavailable as Horton's liquid assets. This appeal follows.

## ISSUES

I. Did CWCSS have standing as an "interested person" within the meaning of Minn.Stat. § 501B.16 (2002) to petition the district court for an order determining the availability of trust assets?

II. Did the district court err in concluding that the Horton Trust assets were unavailable?

## ANALYSIS

### I

▉▉▉ Whether a party has standing is a question of law that appellate courts review de novo. *Joel v. Wellman,* 551 N.W.2d 729, 730 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996). This court is not bound by and need not give deference to the district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Statutory construction is a question of law which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

▉▉▉ We begin by noting that, apparently because of the parties' stipulation, the district court did not address the standing issue in its order determining the availability of the Horton Trust assets. Generally, this court will not consider matters not argued and considered in the dis-

trict court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). But the question of standing cannot be waived and may be raised at anytime. *See Patzner v. Schaefer,* 551 N.W.2d 736, 737 (Minn.App.1996) (stating "[t]he question of standing is not subject to waiver . . .: we are required to address the issue even if the courts below have not passed on it, and even if the parties fail to raise the issue before us") (quoting *United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995)); *see also Cochrane v. Tudor Oaks Condo. Project,* 529 N.W.2d 429, 433 (Minn.App.1995) (stating "[s]tanding may be raised at any time"), *review denied* (Minn. May 31, 1995).

▉▉▉ A trustee of an express trust or a "person interested in the trust" may petition the district court for an order with respect to matters enumerated in the statute. Minn.Stat. § 501B.16 (2002). Specifically, for the purposes of this appeal, an "interested person" may petition the district court for an order to construe or interpret the terms of a trust, or to instruct the trustee, beneficiaries, and any other interested parties in any matter relating to the administration of the trust and the discharge of the trustee's duties. *Id.,* (4)(23). Chapter 501B, however, does not define "interested person."

CWCSS argues that in its capacity as a "designated agency" under Minn.Stat. § 253B.15 (2002),[4] and as an administrating agency of public-assistance programs, it is an "interested person" and may bring a petition for an order under section

---

4. An aftercare plan specifying the services and treatment to be provided to a patient released on provisional discharge, the financial resources available to pay for the services specified, "the expected period of provisional discharge, the *precise goals for the granting* of a final discharge, and conditions or restrictions on the patient during the period of the

provisional discharge," is to be provided to the patient, the patient's attorney, and the *"designated agency."* Minn.Stat. § 253B.15, subd. 1 (2002) (emphasis added). A "designated agency" is defined as any agency selected by the county board to provide the social services required under chapter 253B. Minn. Stat. § 253B.02, subd. 5 (2002).

501B.16. CWCSS also relies on the definition of "interested person" contained in the probate code, which provides, " '[i]nterested person' includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against the estate of a decedent, ward or protected person which may be affected by the proceeding." Minn.Stat. § 524.1–201(24) (2002).

Respondent contends that CWCSS lacks standing because it is not a creditor of the Horton Trust or a trust beneficiary. Respondent argues further that the "interested person" definition in the probate code is inapplicable to an action involving a trust because there is no estate in question and the probate laws are significantly different from the law of trusts.

■ We agree with respondent that the definition of "interested person" contained in the probate code is inapplicable because this controversy concerns the availability of trust assets—there are no heirs, devisees, or a decedent's estate to consider. We conclude that in the context of chapter 501B, an "interested person" is more accurately defined as a person or entity with a specific financial stake in or a specific claim against the trust. Therefore, CWCSS has standing if it can be determined that, as a social-service agency coordinating Horton's discharge plans, it has a financial stake in or claim against the Horton Trust.

The record does not support a finding that CWCSS has a claim against the Horton Trust. There is no evidence, for example, that respondent, on behalf of the Trust, contracted with CWCSS for services and then failed to pay for those services. But CWCSS contends that as a designated agency, it has a financial stake in the determination of respondent's obligation under the Horton Trust as it relates to Horton's medical care. CWCSS argues that if the trustee is not required to pay for reasonable and necessary medical expenses, Horton has no other means of support, making Horton then eligible for public assistance. We are persuaded by CWCSS's argument. A finding that the Horton Trust assets are not available to pay for Horton's placement would place CWCSS in a position of having to locate alternative funding. Therefore, CWCSS does have a specific financial stake in whether the Horton Trust is an asset available to Horton. We conclude that CWCSS is an "interested person" for purposes of section 501B.16 and has standing to petition the district court for an order determining the availability of trust assets for Horton's medical care.

■ Next, respondent contends that notice of the hearing was improper. CWCSS argues notice of the hearing was properly served in compliance with Minn. Stat. § 501B.18 (2002).[5] Determination of whether service of process was proper is a question of law. *Amdahl v. Stonewall Ins. Co.*, 484 N.W.2d 811, 814 (Minn.App.1992), *review denied* (Minn. July 16, 1992). Upon review of the record, it does not appear that this issue was ever presented to the district court. Similarly, respondent argues for the first time on appeal that CWCSS has not exhausted all administrative remedies in ascertaining available funds for Horton's placement. We gener-

---

**5.** A notice of the hearing, unless waived, must be given,

(1) by publishing, at least 20 days before the date of the hearing, a copy of the order for hearing one time in a legal newspaper for the county in which the petition is filed; and (2) by mailing, at least 15 days before the date of the hearing, a copy of the order for hearing to those beneficiaries of the trust who are known to or reasonably ascertainable by the petitioner.

Minn.Stat. § 501B.18.

ally do not consider matters not presented to and considered by the district court. *Thiele*, 425 N.W.2d at 582. Accordingly, we decline to consider these issues here on appeal.

## II

CWCSS argues that the district court's conclusion that the Horton Trust assets were unavailable to Horton is erroneous because the Horton Trust is a support trust. Therefore, CWCSS argues, respondent must pay all of Horton's necessary medical and living expenses. Respondent counters that the Horton Trust is a discretionary trust in which Horton has no property interest and therefore the trust assets are unavailable to Horton. We agree.

Whether a trust is an available asset is a question of law. *In re Carlisle Trust*, 498 N.W.2d 260, 263 (Minn.App. 1993). This court is not bound by and need not give deference to the district court's determination of a purely legal question. *Frost–Benco Elec.*, 358 N.W.2d at 642. Two factors are relevant in determining whether a trust is an available asset: "(1) the type of trust involved, and (2) the settlor's intent in creating the trust." *Carlisle*, 498 N.W.2d at 264.

### 1. Type of Trust

The general rule is that a support trust is an available asset, while a discretionary trust is not. *Id.* at 264. A support trust is considered to be an available asset because the beneficiary can legally compel the trustee to distribute trust assets to him or her. *Id.* The beneficiary of a discretionary trust has no such power because a discretionary trust grants the trustee absolute discretion to disburse the trust assets. *Id.*

The trust of which Horton is a beneficiary expressly states:

If the donor shall be incapacitated by illness, accident or other misfortune, the trustees *may pay* to or apply directly for the benefit of the donor, his wife or persons dependent upon him for support such sums from the income or principal of the trust estate from time to time as the trustees, in the exercise of their *sole discretion* deem necessary or advisable in order to provide for the proper support and maintenance of the donor, his wife or persons dependent upon him for support.

(Emphasis added.)

CWCSS argues that this language makes the Horton Trust a support trust because it is virtually identical to the trust language in *McNiff v. Olmsted County Welfare Dept.*, in which the supreme court concluded that the trust was a liquid asset. *See* 287 Minn. 40, 45, 176 N.W.2d 888, 892 (1970). The McNiff trust agreement provided,

[u]ntil the death of the survivor of either my wife, . . ., or my daughter, . . ., the trustee shall administer the trust estate for the benefit of my wife and my said daughter, or the survivor of either, and the trustee *shall apply* the income in such proportion together with such amounts of the principal as the trustee, in its discretion, deems advisable for the maintenance, care, support and education of both my wife and my said daughter.

*Id.* at 891 (emphasis added).

We disagree that *McNiff* necessitates a conclusion that the Horton Trust is a support trust. The two agreements are readily distinguishable. The McNiff trust agreement provides that the trustee "*shall apply*" the trust assets to the maintenance and support of the trust beneficiaries, while the Horton Trust agreement directs that the trustee "*may pay*" the

trust assets toward the trust beneficiaries' maintenance and support. The "shall apply" language mandates the payment of trust assets for the support and maintenance of the trust beneficiaries. This language is consistent with the nature of a support trust, which directs the trustee to distribute trust income or principal as necessary for the support and maintenance of the beneficiary.[6] *See, e.g., Carlisle*, 498 N.W.2d at 264.

Conversely, the Horton Trust agreement does not direct the trustee to distribute the trust assets to Horton. The "may pay" language places the power to distribute trust assets solely within the discretion of the trustee. *See United States v. O'Shaughnessy*, 517 N.W.2d 574, 577 (Minn.1994) (concluding that the words "may pay" revealed settlors' intent to create a discretionary trust). Unlike the McNiff trust beneficiaries, neither Horton nor the other Horton Trust beneficiaries can compel the trustee to distribute trust assets on their behalf. Under Minnesota law, a beneficiary of a discretionary trust has only a "mere expectancy" in the non-distributed income and principal until the trustee elects to make a distribution of the trust assets. *Id.* Before the trustee has exercised his discretionary power of distribution under the trust agreement, a beneficiary does not have "property" or any "right to property" in the non-distributed trust principal or income. *Id.* at 578. We conclude that the Horton Trust is a discretionary trust, and therefore Horton has no authority to compel distribution of trust assets to himself.

## 2. Settlor's Intent

The second consideration in determining whether the trust assets are "available" to Horton requires us to ascertain the settlor's intent in creating the Horton Trust. The trust settlor's intent will be carried out if it is not contrary to law and public policy. *McNiff*, 287 Minn. at 43, 176 N.W.2d at 891. When the settlor's intent is to supplement rather than supplant government financial assistance available to the trust beneficiary, courts give effect to the settlor's intent and find the trust is not an available asset. *Carlisle*, 498 N.W.2d at 265.

CWCSS argues the Horton Trust agreement lacks language like the trust agreement in *Carlisle* that expressly stated the trust was to supplement and not supplant public assistance. CWCSS contends the absence of this language makes the Horton Trust an available asset. We disagree.

The purpose of a trust is to ensure the beneficiary access to the trust corpus and to close avenues by which he or others might acquire, dispose of, impair, or encumber the property. *See In re Thorne's Estate*, 145 Minn. 412, 417, 177 N.W. 638, 639 (Minn.1920). It is considered an abuse of discretion for a trustee, even where the trustee has absolute, unlimited, or uncontrolled discretion, to violate the settlor's intent or the trust's purpose. *O'Shaughnessy*, 517 N.W.2d at 577.

In *Carlisle*, the trust agreement expressly prohibited the trustee from making any distributions for the beneficiary's "basic necessities as provided or to be provided by any governmental unit" and directed that the trustee "shall make distributions only to supplement and not to supplant such public assistance available for maintenance, health care or other benefits."

---

**6.** While the *McNiff* court termed the trust a discretionary trust, we concluded in *Carlisle* that the McNiff trust was not a "true discretionary trust" because of the *McNiff* court's conclusion that the beneficiary could compel the trustee to disburse at least a portion of the trust assets for her benefit. *Carlisle*, 498 N.W.2d at 265.

*Carlisle,* 498 N.W.2d at 265. The evidence in the record persuades us that, even absent language expressly prohibiting the distribution of trust assets where government assistance is available, the settlor of the Horton Trust did not intend for the trust to supplant public assistance. First, Article VII of the Horton Trust agreement provides:

> Neither principal nor income of the trust nor any beneficiary's interest therein, while undistributed in fact, shall be subject to alienation, assignment, encumbrance, appointment or anticipation by the beneficiary, nor to garnishment, attachment, execution or bankruptcy proceedings, nor to claims for alimony or support or any other claims of any creditor or other person against the beneficiary, nor to any other transfer, voluntary or involuntary, from the beneficiary.

This provision supports the conclusion that it was the Horton Trust settlor's intent to protect the trust assets from anyone asserting a claim of right to the trust assets based on an association with any of the trust beneficiaries. In other words, any claims against undistributed trust assets are prohibited. Second, in his affidavit, respondent indicates that he discussed the Horton Trust with earlier trustees who indicated the trust was created in part to protect its assets from Horton's potential creditors. Moreover, respondent indicated that it was his understanding that the trust was created as an attempt to protect the trust assets from having to be expended for Horton's support if Horton became a ward of the state. Third, Frances Horton, a former trustee of the Horton Trust, stated in her affidavit that the trust was created to protect Horton from others and their possible interest in getting at the assets in the trust. We agree with the district court that the settlor's intent was to protect the Horton Trust assets from others and to grant the trustee sole discretion in distributing the trust assets.

Because the Horton Trust is a discretionary trust and it was not the settlor's intent for it to supplant public assistance, we conclude that the Horton Trust is not an available asset. While the Horton Trust is meant to provide care and maintenance to Horton, respondent, as trustee, has the final and sole discretion as to how such funds should be distributed. Furthermore, we cannot say that the extent of the discretion conferred here is contrary to public policy, especially in light of the fact that the trust beneficiaries include not just Horton, but his wife and children as well. Under these circumstances respondent, as trustee, must consider both Horton and his family in making trust distributions. Therefore, on this record, we conclude that the district court was correct in finding that the Horton Trust assets are unavailable to Horton.

Lastly, CWCSS moved to strike statements in respondent's brief, arguing that the statements are outside the record on appeal. Because this court has confined its review to statements supported by the record, any statements outside the record have not been considered, thus the motion is denied.

## DECISION

Crow Wing County Social Services is an "interested party" within the meaning of Minn.Stat. § 501B.16 (2002). Because the Horton Trust is a discretionary trust, and the settlor's intent in creating the trust was not to supplant any governmental assistance that may be available to Horton, the district court properly concluded that the Horton Trust is not an available asset.

**Affirmed; motion denied.**