**ESTATE OF Linda Jeanne MEALEY, Decedent.**

No. A04–1498.

Court of Appeals of Minnesota.

April 26, 2005.

Kevin A. Spellacy, Gerald L. Thoreen, Quinlivan & Hughes, P.A., St. Cloud, MN, for appellant George Mealey.

Chad M. Roggeman, David R. Crosby, Aaron J. Crandall, Leonard, Street and Deinard, P.A., St. Cloud, MN, for respondent Carol Wofsey.

Christopher W. Harmoning, Gray, Plant, Mooty, Mooty & Bennett, P.A., St. Cloud, MN, for respondent W. James Davis.

Considered and decided by MINGE, Presiding Judge; HUDSON, Judge; and PORITSKY, Judge.*

## O P I N I O N

MINGE, Judge.

Appellant challenges the district court's order accepting the final account in the probate of his daughter's estate. Because appellant has no financial rights affected by the final account that accord him standing to appeal, we affirm.

### FACTS

Linda Jeanne Mealey died testate on November 5, 2002, in Sherburne County. She is survived by her spouse, James W. Davis, and her parents, George and June Mealey. On January 30, 2003, her will was admitted to probate and Carol M. Wofsey,

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the personal representative designated in the will, was appointed to that position.

Other than tangible goods, the will directs that the decedent's estate be distributed to seven beneficiaries. Devises of the lesser of 8% of the estate or $10,000 each are left to Robin Fall and John Veale, two of the decedent's friends. Decedent left Davis, her husband, the elective spousal share under Minnesota law.[1] Davis was given the right to choose which assets of the estate he wished to take to satisfy the bequest. The remaining portion of the estate was divided among four institutions: Cornell University—50%, the Ocean Conservancy—25%, Save–the–Redwoods League—12 1/2%, and Bat Conservation International—12 1/2%.

As a part of his share, Davis chose to take an Australian home owned by decedent. The personal representative valued the home as of the date Davis received a receipt from the personal representative acknowledging the transfer and used the exchange rate between the United States and Australian dollar at the date of decedent's death. The personal representative then filed a petition to allow final account, settle, and distribute the estate. This petition included a description of how the home in Australia was valued and how the exchange rate was determined.

The district court scheduled a hearing on the petition for April 15, 2004. The petition and related documents were mailed to all beneficiaries under the will and the attorney general's office. The personal representative also sent Davis and the charities a form for consenting to the final account. All signed and returned the consent form. The Minnesota Attorney General's Office also submitted a letter dated April 1, 2004, stating that it did not object to the petition.

During 2003, George Mealey, the decedent's father and the appellant in this case, began reviewing the distribution of the decedent's estate. Appellant calculated that Davis gained an advantage of approximately $222,000 because the personal representative used an exchange rate and a valuation date highly favorable to him and approximately $185,000 by the interpretation of a provision in the will related to the elective share. Appellant claims that he communicated to the Minnesota Attorney General's Office his concern that these determinations by the personal representative were inappropriate and asserts that, as a result of appellant's action, the personal representative agreed to make all the parties aware of the valuation and exchange-rate issues and to present them to the court. The only evidence of this agreement is a letter on February 27, 2004, from the attorney general's office confirming an agreement between counsel for the personal representative and the attorney general's office that these issues would be presented to the beneficiaries and the court.

On April 14, 2004, one day before the scheduled hearing, appellant filed a motion to appear as amicus curiae and to be appointed the personal representative. The motion included information related to the valuation of the Australian home and the nature of the bequest to Davis. At approximately the same time, beneficiaries Fall and Veale, the decedent's friends receiving $10,000 under the will, objected on the same grounds. At the hearing, the district court considered arguments related to whether appellant should be awarded status as amicus curiae and whether Fall and Veale had standing to object to the petition. The court asked for written submissions from the parties on these issues.

---

1. The will was ambiguous regarding the elective share and the augmented estate.

Although one of the institutional devisees requested the court to consider appellant's exchange-rate issue, neither Davis nor any of the institutional beneficiaries objected to the valuation of the house or the exchange rate or withdrew their consents.

The district court concluded that Fall and Veale did not have standing to object to the final accounting because their bequests had been satisfied and that they would not be affected by the controversy. The court also rejected appellant's motions to be awarded amicus curiae status and to be appointed as special administrator. The district court accepted the final account.

## ISSUE

Does appellant have standing to appeal the final accounting of his daughter's probate estate?

## ANALYSIS

 The threshold question is whether appellant has standing to object to the final account of the decedent's estate based on a claim that the administration of the estate wrongfully gave Davis too large a share and the institutional beneficiaries too small a share. "Whether a party has standing is a question of law that appellate courts review de novo." *In re Horton,* 668 N.W.2d 208, 212 (Minn.App.2003). Although the question of the appellant's standing was not considered by the district court, "[t]he question of standing cannot be waived and may be raised at anytime." *Id.* "Standing is a requirement that a party has sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490, 493 (Minn.1996). Any party who is aggrieved can take an appeal of a probate matter. Minn.Stat. § 525.712 (2004). An aggrieved person is "one who has been denied some personal or property right, or upon whom has been imposed

some burden or obligation by the order appealed from." *Gabel v. Ferodowill,* 254 Minn. 324, 336, 95 N.W.2d 101, 110 (1959). Under the probate code an interested person

> includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against the estate of a decedent, ward or protected person which may be affected by the proceeding.... The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

Minn.Stat. § 524.1–201 (2004).

Appellant does not fall within the statutory definition of an "interested party." He has no financial stake in the accounting under the will because he is not a beneficiary. No legal or other rights of appellant are affected by how the will is administered. Appellant's claim focuses on his desire to ensure that his daughter's donative intent is implemented. Appellant also argues that he is an aggrieved party because he was involved with an agreement between the attorney general's office and the personal representative's counsel to present issues related to the valuation of the house in Australia. The only evidence of this agreement is the February 27, 2004, letter from the attorney general's office stating that

> This letter is to confirm my agreement with [personal representative's counsel] that the attorneys for the personal representative will ensure that all of the beneficiaries are made aware of the exchange rate issue. In addition, [personal representative's counsel] informed me that this issue will be presented to the court and the court will be asked to decide what impact the ex-

change rate has on the valuation of the Australian property.

Appellant claims that this agreement was breached and that he is an aggrieved party. However, this agreement is clearly stated to be between the attorney general's office and counsel for the personal representative. Therefore, appellant cannot claim aggrieved status as a result of any purported breach. In addition, even assuming that there was some agreement, it is unclear if the agreement was breached because the exchange-rate issue was detailed in the petition to allow the final account that was distributed to all of the parties and submitted to the court. The attorney general wrote to the court that it did not oppose the relief requested in the petition. The appellant cannot gain standing by trying to assert a right that the attorney general's office has chosen not to assert. *See Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 486 (Minn.App.1987) (stating that a party cannot gain standing by asserting the claim of another person).

Appellant also argues that he has standing under the will because public policy supports administration of estates consistent with the testamentary intention of the decedent. Appellant cites New York caselaw in support of this claim. *Stortecky v. Mazzone*, 85 N.Y.2d 518, 626 N.Y.S.2d 733, 650 N.E.2d 391 (1995); *Smithers v. St. Luke's–Roosevelt Hosp. Ctr.*, 281 A.D.2d 127, 723 N.Y.S.2d 426 (N.Y.App.Div.2001). *Smithers* stands for the proposition that the administratrix of an estate can enforce the donative intent of the decedent's gift. 723 N.Y.S.2d at 434–35. The court in *Stortecky* held that the probate court may act sua sponte to examine the accounting of an estate. 650 N.E.2d at 394–95. These decisions do not stand for the proposition that an individual with no stake in the distribution under the will may gratuitously intervene to advocate for that individual's understanding of the decedent's donative intent. Of course, the district court may sua sponte examine the final account and act to correct an inaccuracy or prevent an impropriety. However, the fact that the district court has this prerogative does not give appellant standing to litigate.

Appellant in this case is essentially trying to step into the shoes of one of the benefited institutions or the attorney general to enforce its interest in the case. However, all of the beneficiaries were notified of the issues. The institutions are sophisticated, had access to legal counsel, had enough at stake to give them an incentive to object if they felt the account was wrong, consented to the final account, did not withdraw their consents, and did not appeal. The Minnesota Attorney General's Office was fully apprised of appellant's objections and declined to intervene. If appellant were granted standing to appeal, any person would have standing to appeal, despite not having any right or claim that would be affected by the proceeding. This is inconsistent with Minn.Stat. §§ 524.1–201 and 525.712.

Because appellant is not adversely affected by the decision of the district court, he does not have standing to bring this appeal. Appellant does not seek review of his requests to the district court that he be allowed to appear amicus curia or that he be appointed special personal representative; therefore we do not address them in this appeal. Further, given our determination that appellant does not have standing, we do not reach the merits of appellant's challenge to the account.

## DECISION

Because appellant has no financial stake in or legal or other right affected by the accounting of the will, he is not aggrieved by the decision of the district court and

does not have standing to appeal the order allowing the final account.

**Affirmed.**