The Honorable David Johnson State Representative 1704 North Harrison St. Little Rock, AR 72207-5324
Dear Representative Johnson:
I am writing in response to your request for an opinion on how a "special-needs trust" established by a third-party, with the third-party's assets, impacts the beneficiary's eligibility for Medicaid.[1] You present the following question:
 Specifically, is a third party grantor special needs trust a countable resource of a Medicaid applicant if (1) the trust is funded with assets that are not the applicant's, (2) the trust is created and funded by an individual, other than applicant, who is not authorized to act on behalf of the applicant and is under no legal duty to act for the applicant, and (3) the trustee has discretionary authority to distribute funds in very narrow circumstances so as not to supplant or impact the applicant's benefits?
RESPONSE
I cannot construe individual trust documents. As explained below, a full evaluation of a settlor's intent requires examining the entire trust instrument. But I can opine about the legal effect of certain trust phrases taken in the abstract. For *Page 2 
reasons that will become clear later in the opinion, your question has two layers: First, how would your question fare under the common law? Second, how does your question fare under the Uniform Trust Code as enacted in Arkansas? There are numerous cases on the first question, but no cases on the second. There is, however, a large body of journals and law-review articles that I have relied on and that I believe an Arkansas court would likely rely on if faced with your question. With these qualifications in mind, it is my opinion that a trust with the elements you mention would probably not be a countable resource for Medicaid purposes.
Before explaining the basis for this conclusion, I will need to clear up some terminology. I will then address the controversy surrounding portions of the Uniform Trust Code (UTC), which Arkansas has largely adopted. The controversy centers around whether the UTC has altered the rules Medicaid relies on to determine whether a trust is counted as part of Medicaid-applicants' financial resources. This matters because if an applicant has too many financial resources, the applicant is ineligible for Medicaid benefits.[2]
 I. Terminology
The area of overlap between trust law and Medicaid-eligibility law has some specific terms we should define. First, your question asks about "special-needs trusts." Sometimes that phrase is used interchangeably with supplemental-needs trusts, which may create confusion. As Professor Newman explains, "[b]oth refer to trusts intended to allow their beneficiaries to receive benefits from the trust without disqualifying them from also receiving public assistance. . . ."[3]
There are two key differences between the two terms, which will inform their use in this opinion.[4] First, the phrase "special-needs trust" is a narrow term of art referring to a specific type of trust permitted by federal and state law.[5] Second, *Page 3 
special-needs trusts are usually self-settled, which means the beneficiary is also the person who established and funded the trust. Supplemental-needs trusts, on the other hand, are usually established and funded by a third-party for the benefit of someone else.
The distinction is important because the eligibility rules are very different for trusts funded with Medicaid applicants' own assets. If the trust is self-settled, and the beneficiary wants to remain eligible for public benefits, he or she must comply with the federal and state requirements for self-settled special-needs trusts.[6] The common characteristic among these requirements is that the trust contains a payback provision, [7] which gives all assets in the trust to Medicaid when the beneficiary dies.[8]
This opinion deals solely with supplemental-needs trusts (SNTs) because that is the type of trust your question describes. Although you have used the term "special needs trust," you have also referred to a "third party grantor." If a trust is funded by a third-party, a much different set of rules applies in determining whether the trust is a countable resource for Medicaid purposes. If the beneficiary may demand a distribution from the trust, the trust is consideredavailable to the beneficiary, which renders it a countable resource for Medicaid. To determine whether a beneficiary may demand a distribution, courts look to trust law.[9] *Page 4 
 II. Controversy about the UTC
The UTC's Structure. Arkansas has adopted the Uniform Trust Code with minor changes.[10] For purposes of this opinion, the UTC and Arkansas Trust Code (ATC) will be used interchangeably because the ATC contains the material portions of the debated UTC provisions. The Restatement (Third) of Trusts is an important companion piece to the UTC because the UTC drafters worked alongside the drafters of the Restatement (Third) of Trusts.[11] Noting this close relationship, Professor Foster, an Arkansas trust scholar, explains how the UTC and Restatement (Third) dovetail:
 [T]he UTC and the Restatement (Third) are a companion set, the former for legislative adoption and the latter for judicial adoption on a case-by-case basis. In Arkansas, the Restatement (Second) of Trusts, promulgated in 1957, has long been followed by the Arkansas Supreme Court. The Restatement (Third) is so new that the Supreme Court has not taken any position on it as a whole, although there is no reason to doubt that most, if not all, of it will be followed by the court.[12]
The debate. The debate about the UTC and SNTs centers on two UTC provisions — which Professor Foster briefly notes.[13] In general, thedebate is about whether the UTC alters the old rules for determiningwhether a trust is available to the beneficiary, and therefore countablefor Medicaid purposes. To understand the debate, we will examine the pre-UTC law and then briefly survey the issues concerning the relevant UTC provisions and see what law applies today. *Page 5 Pre-UTC. The first issue in the debate centers on the distinction between "discretionary" and "support" trusts. At common law, a beneficiary's ability to compel a distribution depended on whether the trust was a "discretionary" or "support" trust, which courts determined by evaluating the trust's terms. Discretionary trusts gave the "trustee complete discretion to distribute all, some, or none of the trust income or principal to the beneficiary, as the trustee [saw] fit."[14] At common law, beneficiaries of discretionary trusts generally had no right to compel a distribution.[15] Support trusts required the "trustee to distribute the trust income or principle as necessary for the support and maintenance of the beneficiary."[16] Unlike discretionary trusts, support trusts gave the beneficiary an enforceable right to a trust distribution.[17] This is referred to as the discretionary-support continuum. The second issue in the debate is the standard to which trustees were held as they carried out their responsibilities. The debate in this regard centers on precisely what the common law required. I will deal with that in subsection B, below.
UTC Changes? The debate about the UTC is whether it alters the common-law rules such that beneficiaries of discretionary SNTs may compel a distribution. If beneficiaries can compel, the trust is available, and therefore countable for purposes of Medicaid. The first issue in debate is whether the UTC's abolition of the discretionary-support continuum means all beneficiaries can compel a distribution. The second issue is whether the common law held trustees to something less than good faith when trustees carried out their trust duties. Section 814[18] requires all trustees to act in good faith, regardless of the level of discretion the settlor grants them.[19] *Page 6 
A. Does the abolition of the discretionary-support continuum adversely affect the ability of beneficiaries of third-party SNTs to qualify for Medicaid?
In my opinion, "no." This first flash-point appears to have subsided because the UTC's comments were amended to clarify the issue. UTC critics once argued that because the UTC abolished the distinction between support and discretionary trusts, all beneficiaries of discretionary trusts might now be able to compel a distribution.[20]
In response to the critics, the UTC was amended in 2004 to specifically note that the discretionary-support continuum was abolished only with respect to creditors: "The affect of this change is limited to the rights of creditors. It does not affect the rights of a beneficiary to compel a distribution." The comment goes on to note that to determine whether beneficiaries can demand distributions, we must look to the old common-law rules: "Whether the trustee has a duty in a given situation to make a distribution depends on factors such as the breadth of thediscretion granted and whether the terms of the trust include asupport or other standard."[21] The critics still argue that such a clarification should be in the UTC's text, not its comments.[22]
Regardless, Arkansas courts view comments as "highly persuasive."[23]
Therefore, I believe an Arkansas court would likely cite the comments and commentators to clarify this issue and hold that the answer to the above question is "no." *Page 7 
B. Does UTC § 814's requirement that trustees act in good faith — regardless of the extent of discretion granted to the trustee — alter the common law?
In my opinion, "no." Critics argue that this changes the common law, under which courts policed trustees' conduct for either bad faith or one of three undesired acts: acting dishonestly; acting with an improper motive; or failing to act.[24] Then they argue that holding trustees to an affirmative standard of "good faith" raises the bar for trustees, which gives beneficiaries greater rights than they had at common law. Increasing beneficiaries rights from common law might permit them to demand a distribution.[25] Several commentators have attempted to rebut these claims by arguing that the common law has always held trustees to a duty of good faith.[26]
Professor Newman — one of those commentators — makes two key points that decide this debate, in my view. Newman concludes that the common law has always required good faith in this context. First, he notes that many jurisdictions have cases specifically stating the good-faith requirement.[27] Second, he explains why some cases describe the trustee's duty without specifically using good-faith language. Those cases usually provide that the "trustee's exercise of its discretion will not be disturbed absent one or more [] factors such as bad faith, dishonesty, an improper motive, or a failure to use the trustee's judgment."[28] But, Professor Newman explains, the "different language likely does not reflect substantively different standards."[29] On the contrary, requiring trustees to avoid these bad acts and bad mental states "is another way of expressing the fundamental requirement *Page 8 
that the trustee must act in good faith. . . ."[30] He then illustrates his argument by examining cases from five states and citing the two authoritative trust treatises.[31]
The respondents' arguments, illustrated by Professor Newman, seem most persuasive. A review of Arkansas's cases appears to support Professor Newman's analysis. Since at least 1883, the Arkansas Supreme Court has described the standard to which trustees are held by specifically referencing good faith. A representative example[32] of this language is the following: "[T]he dealings of a trustee with the trust property are narrowly scrutinized by courts of equity. If impugned, they cannot stand unless characterized by the utmost good faith and candor."McNeil v. Gates, 41 Ark. 264 (1883).
In summary, in my opinion, the UTC does not appear to alter the common-law rules regarding the discretionary-support test or the common-law rules regarding trustees being held to good faith. Therefore, the UTC relies on (and to some extent codifies) the common law regarding whether a discretionary-trust beneficiary can compel a distribution.
 III. Conclusion
Therefore, the question of whether a third-party SNT is a countable resource for Medicaid purposes depends on the same pre-UTC test: whether the trust is discretionary. This is purely a question of law.[33] If the trust is discretionary, it is *Page 9 
unavailable, which renders it a non-countable resource for Medicaid purposes. Ultimately, whether a trust is discretionary is a question for a court. But because there are no Arkansas cases specifically on point, I have consulted other persuasive authorities. These authorities all agree that a third-party SNT is not countable if it is discretionary and permits distributions only to supplement (and not to supplant) government benefits.[34] Thus, in the abstract, SNTs containing these provisions render the trust uncountable. But, as indicated in note 7,supra, each trust must be individually evaluated to determine the settlor's intent, [35] which requires considering the entire trust.[36]
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] Medicaid is a joint federal-state endeavor.42 U.S.C. § 1396a(a)(2). A leading treatise explains: "Medicaid is a cooperative state-federal program through which the federal government provides funds to the states to assist the poor, elderly, and disabled to receive medical care. The Medicaid Act requires states to pay for certain services and allows them to provide additional services." Harvey L. McCormick, Medicare and Medicaid Claims and Procedures, § 22:1 (4th ed., West 2005) (footnotes omitted).
[2] E.g. id. at § 27.1 ("Medicaid is a welfare program and is only available to persons whose income and resources fall below specified levels. . . . The income and resource levels are very low.").
[3] Alan Newman, Spendthrift and Discretionary Trusts: Alive and Wellunder the Uniform Trust Code, Real Prop. Tr. J. 567, 618 (2005).
[4] For more explanation regarding the distinction between the two terms see Robert T. Danforth, Article Five of the UTC and the Future ofCreditors' Rights in Trusts, 27 Cardozo L.Rev. 2551, 2587 (2006) and Newman, supra note 3, at 618-19.
[5] The federal standard can be located at 42 U.S.C. § 1396p(d)(4)(A). Arkansas has adopted those standards nearly word-for-word in Medicaid Manual § 3336.8.
[6] 42 U.S.C. § 1396p(d)(4)(A) and Arkansas Department of Human Services Medicaid Manual (Medicaid Manual) § 3336.8, which can be found at http://www.arkansas.gov/dhs/webpolicy/.
[7] Your request reports what you believe is the Arkansas Department of Human Service's position on whether the type of trust you are asking about is a countable resource for Medicaid purposes. You report: "At the present time, it is the opinion of the ADHS that third party granter special needs trusts are countable resources to the applicant/recipient because they do not contain a payback provision." Upon inquiry, I have learned that this is not the ADHS's position. Instead, the agency evaluates each trust individually. Under some circumstances, a trust is not a countable resource even though it lacks a payback provision.
[8] Newman, supra note 3, at 618-19.
[9] See, e.g., Joseph A. Rosenberg, Supplemental Needs Trusts forPeople With Disabilities: The Development of a Private Trust in thePublic Interest, 10 Boston Univ. Pub. Int. L.J. 91, 108-09 (2000).
[10] See generally Lynn Foster, The Arkansas Trust Code: Good Law forArkansas, 27 UALR L.Rev. 191 (2005) (explaining most changes). The Arkansas Trust Code can be found at A.C.A. 28-73-101 to 28-73-1106
(Supp. 2007).
[11] A prefatory note to the UTC explains: "The Uniform Trust Code was drafted in close coordination with the writing of the Restatement Third."
[12] Foster, supra note 10, at 194.
[13] Id. at 192-93, 233 ("[S]ome portions of the UTC . . . have engendered controversy. . . . This article endeavors to point out the sections in question that are relevant to the ATC." [p. 193] "This section [§ 504] has also stirred some controversy." [p. 233]).
[14] McCormick, supra note 1, at § 27:3.
[15] See Newman, supra note 3, at 620; Restatement (Second) of Trusts, § 155, cmt. b.
[16] McCormick, supra note 1, at § 27:2; Restatement (Second) of Trusts § 154, cmts. d, e.
[17] E.g. In re Horton 668 N.W.2d 208 (Minn.Ct.App. 2003); Eckes v.Richland County Soc. Servs., 621 N.W.2d 851, 855 (N.D. 2001); Newman,supra note 3, at 620-21.
[18] ATC § 814(a) states: "Notwithstanding the breadth of discretion granted to a trustee in the terms of the trust, including the use of such terms as "absolute", "sole", or "uncontrolled", the trustee shall exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." A.C.A. 28-73-814(a) [UTC § 814(b)].
[19] A separate question is whether courts require trustees to act reasonably. Professor Newman explains that "[r]equiring a trustee to act in good faith, however, is not the same as requiring it to act reasonably." Newman, supra note 3, at 609-10 (citing Scott on Trusts, § 187.2). All trustees must act in good faith, but not all trustees must act reasonably. The distinction depends on the trust's wording.
[20] Mark Merric, et al., The Uniform Trust Code: A Continued Threatto SNTs Even After Amendment, J. Pract. Estate Planning, April — May 2005, 41-54 ("Part I"); Mark Merric, et al., The U.T.C.: A ContinuedThreat to Special Needs Trusts — Part II The Creation of an EnforceableRight in Almost All Discretionary Trusts, J. Pract. Estate Planning, December 2005 — January 2006, 35-50 ("Part II").
[21] Uniform Trust Code, § 504, comment (emphasis added).
[22] Merric, Part II, supra note 20, at 37 ("While such an amendment is a step in the right direction, it still fails to cure the problem. As noted above, legislatures enact statutes; they do not enact comments.").
[23] E.g. Cranfill v. Union Planters Bank, N.A., 86 Ark. App. 1,158 S.W.3d 703 (2004).
[24] Merric, Part I, supra note 20, at 45.
[25] Id. at 45-47.
[26] E.g. Newman, supra note 3; Danforth, supra note 4.
[27] There are various sub-rules about the consequences resulting from the breadth of discretion granted the trustee. These are irrelevant here because we are dealing solely with supplemental-needs trusts, which generally have a certain type of discretion because only a certain type of discretion enables beneficiaries to qualify for public benefits.See, e.g., Newman, supra note 3 at 618-24.
[28] Newman, supra note 3, at 604-05.
[29] Id.
[30] Id. at 606.
[31] Id. at 606-09 (California, Colorado, Minnesota, South Carolina, and Virginia).
[32] Other examples include: Riegler v. Riegler, 262 Ark. 70, 76,553 S.W.2d 37, 40 (1977) (citing Restatement (Second) of Trusts § 170) ("It is well settled that a trustee is held to a high standard of good faith and prudent dealing. He owes a duty of loyalty to the beneficiaries.");Tarver v. Taliaferro, 244 Ark. 67, 71, 423 S.W.2d 885, 888 (1968) ("[T]he law demands of the trustee a high standard of loyalty in his fiduciary capacity."); Hardy v. Hardy, 222 Ark. 932, 940, 263 S.W.2d 690,694 (1954) ("A trustee must act in good faith in the administration of the trust, and this requirement means that he must act honestly and with finest and undivided loyalty to the trust, not merely with that standard of honor required of men dealing at arm's length in the workaday world, but with a punctilio of honor the most sensitive.");Graham Bros. Co. v. Galloway Woman's College, 190 Ark. 692, 81 S.W.2d 837
(1935) ("It is familiar doctrine that it is the duty of the trustee to administer the trust according to the provisions thereof, exercising the utmost good faith and business prudence with respect of the funds committed to his care. . . .").
[33] E.g. In re Decision of Com'r of Human Services in Appeal ofFlygare for Medical Assistance, 725 N.W.2d 114 (Minn.App. 2006);Thorson v. Nebraska Dept. of Health and Human Services, 740 N.W.2d 27
(Neb. 2007) ("When the parties do not claim that the terms of a trust are unclear or contrary to the settlor's actual intent, the interpretation of a trust's terms is a question of law.");
[34] E.g. In re Leona Carlisle Trust, 498 N.W.2d 260 (Minn.Ct.App. 1993); Hecker v. Stark County Soc. Serv. Bd., 527 N.W.2d 226 (N.D. 1994); Newman, supra note 3, at 621 ("For a third-party created trust with terms that explicitly allow distributions for beneficiary's supplemental needs, case law is clear and uniform that the assets of the trust will not be considered in determining the beneficiary's eligibility for public benefits."); Stanley C. Kent Richard E. Davis,The Uniform Trust Code and Supplemental Needs Trusts, 15 Ohio Prob. L.J. 53A (2005); Restatement (Third) of Trusts, § 50, cmt. e(4) and Reporter's Note to cmt. e(4); see generally, Clifton B. Kruse, Jr.,Third-Party and Self-Created Trusts: Planning for the Elderly andDisabled Client, 51-52, 70-82 (3d ed. 2001) (citing numerous cases and statutes).
[35] E.g. Bailey v. Delta Trust Bank, 359 Ark. 424, 432,198 S.W.3d 506, 512-13 (2004) ("The cardinal rule in construing a trust instrument is that the intention of the settlor must be ascertained."); Rosenberg, supra note 9, at 110, 120-22.
[36] E.g., Bailey, 359 Ark. at 432, 198 S.W.3d 512-13.

 *Page 1